### EMERSON TOWER v. THE PROVIDENCE & WORCESTER RAILROAD COMPANY.

Where a railroad company, not obliged by their charter to fence the road against adjoining lands unless requested so to do by the owner, agreed with such owner that they should not fence the road against his lands, and a cow placed upon such lands having strayed upon the railroad, where it was killed by the passing of a train of cars, *held*, that the owner of the cow, having contributed, by his own fault in permitting the cow to pass upon the road, to its destruction, was not entitled to damages for its loss, and that the charge of the Court, that "if the cow were killed by the neglect of the defendants to use ordinary care and skill in the common and ordinary use of the lands for railroad purposes, then the defendants would be liable to the owner for damages," was erroneous.

THIS was an action of trespass on the case, for the recovery of damages for the loss of a cow, alleged by the plaintiff to have belonged to him, and to have been killed by the negligence of the defendants. At the trial, before STAPLES, J., in the Court of Common Pleas, it appeared in evidence, that the plaintiff's cow was pastured upon lands of the Albion Company; that by contract between the said Albion Company and the defendants it was stipulated, that the defendants should not erect or keep up any fence or fences between the track of their railroad and the said lands of the said Albion Company, upon which laid cow was pastured; that said cow passed from said sands of said Albion Company, (so stipulated not to be fenced and not kept fenced,) upon the track of the railroad of the defendants, where she was killed by a loco-

motive attached to a train of cars running upon their railroad.

Upon these facts, the defendants requested the Court to charge the jury, "that if they found that the plaintiff pastured the cow on the land of the Albion Company, by contract with said Company, and that said Company, when conveying to the defendants the right of passage through the said land, stipulated that the crossing of a certain private way upon the railroad, and that the lands of said Company should not be fenced by the defendants, so that cows pastured on said lands might freely go upon said railroad, and that said cow did pass from said lands, (so stipulated not to be fenced and not kept fenced,) upon the track of the railroad of the defendants, and was there killed by a locomotive attached to a train of cars running upon said road, that then the plaintiff cannot recover in this action the value of the cow, because the cow was a wrong-doer, and wrongfully upon the premises of the defendants, and that so far as the plaintiff is concerned, whatever might be the rule in an action by a passenger against the defendants, to recover damages for injuries sustained in consequence of a collision between a cow and a train of cars,) the defendants are not legally liable for any want of care or skill on the part of their agents or servants, and that the plaintiff has no legal claim upon the defendants, even if the cow was killed by the negligence of their agents or servants in conducting the train."

The Court refused to make this charge, but did charge, "that if the landholder sold lands to the railroad company, and provided in his deed that the same should not be fenced from the railroad, and afterwards put his cattle to pasture in lands adjoining those sold, and they were killed, in consequence of the neglect of the defendants to

use ordinary care and skill, in the common and ordinary use of the lands for railroad purposes, (such care and skill as a man of common prudence would use,) then the defendants would be liable for the damages sustained by the owners of the cattle so killed."

The jury found a verdict for the plaintiff, and the defendants, thereupon, excepted to the charge of the Court.

*Ames & Payne*, for the defendant, contended, That, by their charter the Company not being bound to fence against the adjoining lands, unless requested by the owner, and having in this case stipulated that they should not fence, cattle straying upon the road from such land were trespassers, as was the case at common law with cattle straying upon another's land, even though unfenced. Gale & Whateley, 297. *Rust* v. *Low et al.*, (6 Mass. 94.) *Bush* v. *Brainard*, (1 Cowen, 79, note ; Dyer, 372.) Every unwarrantable entrance, by person or cattle, was trespass, whether the land was fenced or not. (19 Johns. 385; 1 Chit. 94; 2 Henry Bl. 527.) The trespass of the cattle was the trespass of their owner, and no principle was better settled, than that no man could recover damages for an injury to which he had contributed by his own wrong. If injury had resulted to both, the defendant would have had as good reason to recover as the plaintiff. That the action was founded on the defendant's negligence, and, in order to make the defendant guilty of neglect to the plaintiff, there must have existed some relation between the parties, by virtue of which the defendant owed him care and diligence, and if their relation did not require care, there could be no neglect. *Blyth* v. *Topham*, (1 Cro. J. 158.) *Bush* v. *Brainard*, (1 Cow. 78.) *Sark* v. *Blackburn*, (4 C. & P. 297.)

*Blackman* v. *Simmons,* (4 C. & P. 138.) *Brock* v. *Copeland,* (1 Esp. 203.) *Jordin* v. *Crump,* (8 M. & W. 782.) *Howland* v. *Vincent,* (10 Met. 371.) *Bosworth* v. *Swansey,* (10 Met. 365.) *Tona. R. R.* v. *Munger,* (5 Denio, 255 ; 4 Eng. L. & E. R. 405.) That if the plaintiff had left a box of goods on the track he could not recover for damages to them, and that a cow was but a chattel endowed with the power of locomotion, and if its owner left it where its instincts would lead it into danger, he should abide the consequences. That this rule would not excuse intentional injury, nor a want of carefulness in regard to persons, but that it would not do to invest cattle with the sacredness of human beings, and for that reason the decision in *Robinson* v. *Cole* was inapplicable to this case.

*Robinson,* for the plaintiff, contended, That the fault with the argument for the defendant, and of the cases which had assumed the same ground, consisted in an attempt to apply the principles of the old common law which were reasonable enough with reference to the mode of travel which prevailed when they were settled, to a mode of travel of vastly greater speed and danger ; that this increase of speed and danger called for a proportional increase of care and caution; that if, by reasonable care, the defendants could have driven the cow from the track, they were bound to bestow it, and to treat the cow, as the farmer would if it were trespassing upon his land, and not kill it, if by ordinary care they could prevent it ; that this was the purport of the charge, and that by it the question of care was left, where it should have been, with the jury ; and he cited the case of *Robinson* v. *Cole,* (3 Law Rep. N. S. 444,) as exactly in point, and also con-

tended that the cases cited recognised a distinction between cases where, though the plaintiff were in fault, yet the defendant was liable for care, and those where he was not, and that this case was within the distinction.

BRAYTON, J. delivered the opinion of the Court. The first question to be considered is, whether the discretion actually given to the jury in this case was correct in point of law.

It will be seen, that in the form in which it is given, it involves the broad proposition, that every person is liable for all damages accruing to another from the want of ordinary skill and care in the use of his own property, without regard to the fact that the party injured is guilty of gross neglect or want of care on his part. It holds the railroad company to the same care towards one who voluntarily puts his property in the way of danger, as toward one who by his utmost caution is unable to avoid it.

Now we think the authorities do not sustain such a proposition as the charge implies; on the contrary, the whole current of authorities makes the distinction between those who are lawfully in the place of danger, and have used common care and prudence to avoid the injury, and those who, either by their own carelessness or wilfulness, have put themselves in a place of danger ; and the question in all these cases is, whether the injury was caused by the negligence or want of care of the defendant alone, or whether, on the other hand, the neglect or carelessness or wilfulness of the plaintiff substantially contributed to the injury received. In the one case the defendant is held liable, in the other, not. *Brock* v. *Copeland,* (1 Esp. 203.) *Sark* v. *Blackburn,* (4 C. & P. 296.) *Blackman* v. *Simmons,* (4 C. & P. 128.) *Bush*

v. *Brainard*, (1 Cow. 78.) *Bosworth* v. *Swansey*, (10 Met. 365,) all support this distinction.

In the case of *Tonawanda Rail Road Co.* v. *Munger*, (5 Den. 255,) all the English cases are reviewed. This case was like the one before us. The action was brought by the plaintiff, for an injury alleged to be done to the cattle by the carelessness of the company's servants, in conducting their train of cars. The defence was, that the plaintiff's cattle strayed from his own enclosure upon the track of the railroad. The Court held, that there could be no recovery, and upon this ground, that in permitting the cattle to stray into a place of danger, where they had no right to be, the plaintiff was guilty of negligence, which was itself one cause of the injury ; and the Court say, that the doctrine is well settled, that such action cannot be maintained, if the wrongful act of the plaintiff co-operated with the misconduct of the defendant or his servant, to produce the damage sustained, and that it is not necessary that the plaintiff's conduct should be wrong in intention, if it be wrongful in law.

To the same point is the case of *The New York & Erie Railway* v. *Skinner*, (1 Am. Law Register, 97.)

Legally speaking, negligence is the want of that care which the law requires us to exercise, which it exacts as a duty. This care may be due to one individual, and not to another, and therefore negligence in fact is not always negligence in law, for unless a party can show that some duty to him is violated, he shows no legal negligence. This is exemplified in the case of *Blyth* v. *Topham.*

The defendant dug a pit on his own land and left it open, whereby cattle were exposed to injury. This he had a right to do, although his own cattle were thereby killed. So far it was a violation of no duty of which any

one could complain. But there were commoners who had a right to feed their cattle upon the land and to have the common safe. He owed them a legal duty. He was bound to do no act which should in any way disturb or interrupt the exercise of the right of common. But when we come to the plaintiff in that case, who had no such right to have his cattle upon the land, all duty ceased. He comes as a trespasser and must look to the consequences and has no right to claim that he shall be cared for. So far as mere neglect goes there is no violation of duty.

This, of course, does not extend to wilful acts whereby the person or property of any one may be injured. For wilful or intentional injuries, the person guilty would be liable.

If then there were any evidence of negligence or want of care on the part of the plaintiff which might contribute to the injury of which the plaintiff complains, the jury should have been directed to weigh and consider it, and, if they found the existence of such negligence, to consider also, whether it substantially contributed to the injury.

If there were no such evidence for the jury to consider, it might not have been necessary to vary the direction to meet any hypothetical case or to instruct the jury what the law would be in such case. On the case stated was there evidence of negligence in the plaintiff which might have contributed to the injury?

By the common law, every person was bound to keep his cattle upon his own lands and not suffer them to stray upon his neighbor's and, if they so strayed, he was liable for the damage they committed. No one was bound by law to fence against them. The statute so far altered the

common law, as to require adjoining owners to build the partition fence in common, and provided for a division, so that each should maintain his proper portion and made the delinquent party liable for all damages suffered from the neglect to maintain a lawful fence. In such case, if cattle lawfully in the adjoining land pass through the plaintiff's defective fence into his land, he has no remedy.

This, however, may be governed and controlled by the agreement of the parties concerned, so that the whole may be maintained by one alone or the right to have it fenced waived altogether.

Such is the present case. The parties here have agreed that no partition fence shall be maintained. The Railroad Company, by their agreement with the owners of the land depastured by the plaintiff, are released from all obligation or duty to maintain any fence upon the dividing line. The parties are left therefore as at common law. The charter of the Railroad Company imposes the duty to fence the road against adjoining owners, only when they shall be required to do so. It is here not required but expressly waived.

The plaintiff then stands, as at common law, bound to keep his cattle within his own enclosure and liable for all damages done by them, if they stray upon the adjoining land. He is in fault if he suffers them to stray. If they were upon the land of the Railroad Company, they were there without right. They were there in fact through the wrongful conduct of the plaintiff, as were the cattle of the plaintiff in the case of *Blyth* v. *Topham*, upon the common ; the only difference being, that the cattle were killed in one instance by being run over, and in the other, by falling into the pit made by the defendant.

55

The only case to which we have been referred by the defendant's counsel, is that of *Robinson* v. *Cole*, (3 Law Rep. 444.) The plaintiff in that case was a mere child, who was at the time of the injury coasting down the hill, and the defendant, through want of care, drove his team against him and fractured his leg. The defence was that there was a want of care on the part of' the boy, which contributed to the injury produced. And the Court say, without infringing the general rule contained in the other cases, that the plaintiff was held to no more care than he was capable of, that he was incapable of the same degree of care as an adult would have been, and they held that he could not be charged with negligence while he exercised that degree of care, which might reasonably be expected, from a boy of his tender years. This case recognises the general rule in its fullest extent.

The counsel for the plaintiff seeks to apply the principle of that case to the facts of the present, and claims that, the animal being incapable of care, there could be no neglect on the part of the plaintiff. But the care required is in the party and not in his property. His neglect is that he permitted the animal, which, of course, could not be supposed to exercise care, to go into a place of danger where it had no right to be, and it is on this point alone that the owner is chargeable for all damages, which animals commit when they are suffered to stray away.

The plaintiff's counsel urged in the argument, that the Railroad Company did not fall within the principle of these cases, that their business was in its nature dangerous, calling for the exercise of a much greater degree of care and caution, and that in this respect there was a distinction to be made between such companies and individuals engaged in other modes of travel.

Now, we easily see that as to their passengers, as to those for whom they are transporting merchandise and, indeed, as to all those to whom they owe a duty, in view of the extent of damage which might ensue from want of proper caution, they would feel bound to exercise the utmost care and caution to see that the cars and engines were in the most perfect order and that their servants conducted themselves with the utmost care.

But it is not so easy to perceive upon what principle they are to be held to more care towards those to whom they owe none, or how the plaintiff should be excused from all care, when from the conceded danger it would be reasonable to expect the greater caution. The plaintiff knew the extent of the danger, yet he took no care whatever to avoid it. He suffered his cow to stray where in all probability she would be killed. He chose to run the hazard and must abide the consequences.

The same reasons which render the charge given erroneous, required the charge asked for by the defendant's counsel.

The exceptions therefore must be sustained, and as, from the facts appearing in the cause, the plaintiff could not recover, and judgment should have been for the defendant in the Court below, we must, order judgment here for the defendant for his cost, in conformity with the agreement of the parties.